United States District Court
Middle District of Florida
Jacksonville Division

GREGORIO BUSTAMANTE,

  *Plaintiff,*

V.             NO. 3:22-cv-551-MMH-PDB

SUPERIOR SCAFFOLDING &
INSULATION INC.,

  *Defendant.*

## Report & Recommendation

In this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and state law, the parties move under *Lynn's Food Stores, Inc., v. United States ex rel. U.S. Department of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement and dismissal with prejudice. Doc. 33.

## Background

In May 2022, Gregorio Bustamante filed this action. He brings three claims for relief. First, he brings a claim under the FLSA for allegedly failing to pay him overtime compensation. Second, he brings a claim under the FLSA for allegedly retaliating against him because he complained about the failure. And third, he brings a claim under Fla. Stat. § 440.205 for allegedly retaliating against him because he requested a workers' compensation benefit. Doc. 1.

Bustamante alleges the following facts. Defendant Superior Scaffolding & Insulation Inc. is an enterprise engaged in commerce or in the production of goods for commerce. Doc. 1 ¶ 9. Superior Scaffolding is a foreign for-profit

corporation that provides services to out-of-state clients. Doc. 1 ¶ 8. Superior Scaffolding's annual gross revenue was more than $500,000 at all material times. Doc. 1 ¶ 8. Superior Scaffolding employed him for approximately two and a half weeks, and he worked an average of seventy to eighty hours each week. Doc. 1 ¶¶ 10, 11. Superior Scaffolding paid him approximately $1,000 a week and failed to properly compensate him for overtime hours. Doc. 1 ¶¶ 12, 13. His estimated unpaid wages and liquidated damages total $1,166.67 plus reasonable attorney's fees and costs. Doc. 1 ¶ 15. Superior Scaffolding knew or should have known about FLSA provisions concerning payment of overtime wages and never posted any notice informing employees of their right to overtime and minimum-wage payments. Doc. 1 ¶ 17. Superior Scaffolding "willfully and intentionally" refused to pay and still owes him overtime wages. Doc. 1 ¶ 18, 22.

Bustamante complained about unpaid overtime wages, and Superior Scaffolding terminated him. Doc. 1 ¶¶ 23, 24, 34. Bustamante's complaint was the "sole apparent reason," "motivating factor," or "one of the motivating factors" for his termination. Doc. 1 ¶¶ 26, 35, 36. Alternatively, he would not have been fired but for claiming or trying to claim workers' compensation benefits. Doc. 1 ¶ 37. While employed by Superior Scaffolding, he cut his finger in a work-related injury. Doc. 1 ¶ 31. He informed Superior Scaffolding about the accident and requested medical treatment, but Superior Scaffolding ignored the request. Doc. 1 ¶¶ 32, 33. As a result of the wrongful discharge, he suffered lost wages and emotional distress. Doc. 1 ¶ 39. Superior Scaffolding's conduct was willful, wanton, and in reckless disregard of his rights. Doc. 1 ¶ 40.

In July 2022, Superior Scaffolding answered the complaint. Doc. 7. It admits the following facts. It is a foreign for-profit corporation that provides

services to out-of-state clients. Doc. 7 ¶ 8. Its annual gross revenue was more than $500,000 at all material times. Doc. 7 ¶ 8. It employed Bustamante. Doc. 7 ¶ 21. While employed by Superior Scaffolding, he cut his finger in a work-related injury. Doc. 7 ¶ 31. Superior Scaffolding was aware he suffered an injury in the course and scope of his employment. Doc. 7 ¶ 32, 33. Superior Scaffolding denies the remaining allegations.

Superior Scaffolding raises fifteen defenses: (1) Bustamante was accurately and appropriately compensated; (2) liquidated damages are unrecoverable because Superior Scaffolding acted in good faith and had reasonable grounds to believe it complied with the FLSA; (3) he cannot recover for any FLSA claim based on conduct outside the statute of limitations; (4) the action is barred to the extent he seeks recovery for time not compensable under the FLSA; (5) the claims are barred or limited to the extent the time period is within the "de minimis" exception; (6) any action or omission was not willful or reckless but in good faith and based on a reasonable belief Superior Scaffolding was complying with the FLSA; (7) the claims may be barred by estoppel to the extent he represented that he worked the hours for which he was paid and Superior Scaffolding reasonably relied on his representations to its detriment; (8) the claims are barred or limited as to all hours he allegedly worked but Superior Scaffolding had no actual or constructive knowledge of; (9) the claims are barred by his failure to mitigate alleged damages; (10) the claims are barred by the doctrines of accord and satisfaction, unclean hands, or payment; (11) he fails to state a claim on which relief can be granted because all employment actions were based on legitimate and non-retaliatory reasons or because the complaint lacks facts showing a causal connection between protected activity and adverse employment action; (12) Superior Scaffolding is entitled to a setoff; (13) the complaint is barred because Superior Scaffolding

exercised reasonable care to prevent and promptly correct any alleged retaliatory behavior; (14) claims based on physical or emotional injury or mental distress are barred because no conduct was extreme or outrageous or undertaken with the intent to cause or with reckless disregard of the probability of causing emotional distress; and (15) the claims may be barred by the after-acquired-evidence doctrine. Doc. 7 at 7–10.

In July 2022, Bustamante answered the Court's interrogatories. Doc. 8. He represents the following facts. He worked for Superior Scaffolding from April 13 to April 29 or 30, 2022. Doc. 8 at 1. On average, he worked "approximately 12 to 14 hours per day from 7am-7pm." Doc. 8 at 1. He was an industrial metal mechanic, installed insulation and sheet metal, and cut sheet metal. Doc. 8 at 2. His hourly pay was $25. Doc. 8 at 2. He worked approximately 70 to 80 hours a week, including approximately 30 to 40 overtime hours. Doc. 8 at 2. He first complained to Superior Scaffolding about the alleged FLSA violations the day he was terminated or the day before. Doc. 8 at 2. The complaint was oral, and he was terminated the next day. Doc. 8 at 2. He has records of the hours he worked. Doc. 8 at 3.

In August 2022, Superior Scaffolding filed a verified summary of the hours Bustamante worked. Doc. 10. Superior Scaffolding represents the following facts. He worked a total of 157 hours, including 48 overtime hours. Doc. 10 at 1–2. His hourly pay was $25. Doc. 10 at 1–2. His total wages at a regular rate were $2,750, and his total wages at an overtime rate were $1,800. Doc. 10 at 1–2. He received $1,120 for per diem. Doc. 10 at 1–2. The first week, Superior Scaffolding paid him for only 26 of the 30 hours he had worked and paid a per diem for only two of the three days and paid the remaining time and per diem in his next paycheck. Doc. 10 at 1–2.

In September 2022, the parties informed the Court they had not settled but wanted to continue negotiations. Doc. 13. In October 2022, the parties informed the Court they had settled. Doc. 14. In November 2022, they filed the current motion for approval of the settlement, Doc. 16, and the settlement agreement, Doc. 16-1.

## Motion

Superior Scaffolding agrees to pay Bustamante $583.33 in wages, less appropriate taxes and withholdings, and $583.33 in liquidated damages. Doc. 16-1 ¶ a. Superior Scaffolding also agrees to pay him $3,281.34. Doc. 16-1 ¶ a. The parties explain the "additional consideration" is to resolve his claims of wrongful discharge. Doc. 16 at 2. Superior Scaffolding agrees to pay his attorneys $4,052.00 in fees and costs. Doc. 16-1 ¶ a. The parties state they negotiated the fees and costs separately. Doc. 16 at 2, 5.

Bustamante agrees to release Superior Scaffolding from all claims "arising from the allegations contained in the lawsuit," but not any claim related to workers' compensation, benefits under any retirement plan, claims arising after the release was signed, claims that cannot legally be released, or rights or claims to enforce the agreement. Doc. 16-1 ¶ b (capitalization omitted). He also agrees to release Superior Scaffolding from claims related to Medicare payments and the Medicare Secondary Payer Act. Doc. 16-1 ¶¶ f, g. He is not a Medicare recipient, and he represents Medicare has made no payments to him related to the alleged injuries and damages. Doc. 16-1 ¶ e. He agrees to "defend, indemnify, protect and hold harmless" Superior Scaffolding from liens, claims, liability, and actions arising from treatment or insurance related to the alleged injury. Doc. 16-1 ¶¶ d, e.

The parties assert disputed issues are present, including liability and damages. *See* Doc. 16 at 2, 6 (describing the dispute). They assert they exchanged "information, records, and other evidence" and "participated in good-faith settlement negotiations[.]" Doc. 16 at 2. They state, "[T]he Parties jointly submit that there has been sufficient communications, negotiations, and an exchange of information to allow counsel for the Plaintiff and the Defendant to properly evaluate the Parties' claims and defenses and to advise their clients accordingly." Doc 16 at 5–6. They agree the settlement is a "fair and reasonable resolution" of Bustamante's claims. Doc. 16 at 6.

The parties ask the Court to approve the agreement and dismiss the case with prejudice. Doc. 16 at 3.

## Authority

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages for up to two years or, if the employer intentionally violated the law, for up to three years, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260); and attorney's fees and costs, 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit in *Lynn's Food* placed limits on the ability of private parties to settle a FLSA case. *See Lynn's Food*, 679 F.2d at 1353–55 (establishing the limits); *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306–07 (11th Cir. 2013) (describing *Lynn's Food*, observing the case involved employees and their current employer, and holding *Lynn's Food* also applies to cases between former employers and employees). Parties must present their agreement to the court, and the court must scrutinize the agreement for fairness. *Nall*, 723 F.3d at 1306–07.

To approve a settlement, a court must find the settlement is fair, adequate, reasonable, and not the product of collusion. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Factors pertinent to this finding include whether there was collusion or fraud; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food*, 679 F.2d at 1355.

The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

## Analysis

Considering the parties' representations and a review of the complaint, the answer and defenses, the answers to the Court's interrogatories, the verified summary, and the motion to approve the settlement agreement, the agreement is fair, adequate, reasonable, and not the product of collusion.

The parties are represented by counsel. There is no stated or apparent collusion or fraud. Disputed issues are present. To resolve the FLSA overtime claim, Superior Scaffolding is paying Bustamante what he requested in the complaint as actual unpaid overtime wages and liquidated damages for that claim. *Compare* Doc. 1 ¶ 15 (complaint allegation alleging unpaid overtime wages and liquidated damages totaling $1,166.67), *with* Doc. 16-1 ¶ a (settlement agreement provision in which Superior Scaffolding agrees to pay him $583.33 in wages, less appropriate taxes and withholdings, and $583.33 in liquidated damages). Resolving the disputed issues without settlement would require costly discovery and continued litigation. Bustamante would risk receiving nothing.

The motion does not ask the Court to retain jurisdiction to enforce the agreement. The agreement contains nothing commonly found objectionable.* Approval is warranted.

---

*For example, some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-CEM-TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014). Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g.*, *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-cv-88 (WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013). Some judges will not approve an agreement to settle a FLSA claim that includes a broad or pervasive release because, without an indication of the value of the released claims, the

On attorney's fees and costs, considering the parties' representation that they agreed on the fees and costs separately from amounts to Bustamante, the Court need not undertake a lodestar review.

## Consent

To expedite the resolution of the current motion, the parties still have an opportunity to consent to the undersigned conducting the remaining proceedings in this action, including entry of judgment. To do so, the parties must jointly execute and file the consent form attached to this report and recommendation (using a single form rather than separate forms). Of course, the parties remain free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(b)(2).

## Recommendation

The undersigned recommends:

1.  **granting** the parties' motion for approval of the settlement, Doc. 16, and approving the settlement as a fair and reasonable resolution of disputed issues;

2.  **dismissing** the case with prejudice; and

3.  **directing** the Clerk of Court to close the file.

### Deadlines for Objections and Responses to Objections

"Within 14 days after being served with [a report and recommendation on a dispositive motion], a party may serve and file specific written objections

---

fairness and reasonableness of the compromise cannot be determined. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to specifically object to the proposed findings and recommendations alters the scope of review, including waiver of the right to challenge anything to which no specific objection was made. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on December 8, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Attachment: AO Form 85